## Office of Disciplinary Counsel v. Burd

Disciplinary Board docket no. 132 D.B. 2003.

O'CONNOR, *Member,* November 2, 2004—Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

## I. HISTORY OF PROCEEDINGS

On September 11, 2003, Office of Disciplinary Counsel filed a petition for discipline against respondent, Amy B. Burd. The petition charged respondent with violations of the Rules of Professional Conduct and Rules of Disciplinary Enforcement in three separate matters. Respondent filed an answer to petition on January 9, 2004. In this filing she admitted all of the averments of fact, as well as the averred rule violations.

A disciplinary hearing was held on January 9, 2004, before Hearing Committee 3.01 comprised of Chair Lawrence V. Young, Esquire, and Members Gary M.

Lightman, Esquire, and John Henry Reed, Esquire. Respondent appeared pro se. The petition for discipline and answer thereto were entered into the record.

The Hearing Committee filed a report on June 24, 2004, finding that respondent violated the rules as charged in the petition for discipline, and recommending that respondent be suspended for one year and one day.

This matter was adjudicated by the Disciplinary Board at the meeting of September 27, 2004.

## II. FINDINGS OF FACT

The board makes the following findings of fact:

(1) Petitioner, whose principal office is located at Suite 1400, 200 North Third Street, Harrisburg, Pennsylvania 17101, is invested, pursuant to Rule 207 of the Pennsylvania Rules of Disciplinary Enforcement, with the power and duty to investigate all matters involving alleged misconduct of an attorney admitted to practice law in the Commonwealth of Pennsylvania, and to prosecute all disciplinary proceedings brought in accordance with the various provisions of the aforesaid rules.

(2) Respondent was born in 1959 and was admitted to practice law in Pennsylvania in 1984. Respondent maintains her office at 296 Kolln Lane, Bellefonte PA 16823. She is accordingly subject to the disciplinary jurisdiction of the Disciplinary Board of the Supreme Court of Pennsylvania.

(3) Respondent has a prior record of discipline consisting of an informal admonition administered in 2001

for failure to take action in a court-appointed PCRA matter.

## *Judge Kistler Matter*

(4) Respondent was court-appointed to represent Richard M. Walker, Jr. in connection with criminal charges. In March 2001, Mr. Walker was convicted in Centre County of criminal charges involving the sexual assault of various minors. He was sentenced on April 11, 2001, to three to six years incarceration.

(5) On May 9, 2001, respondent filed a notice of appeal to the Superior Court on behalf of Mr. Walker.

(6) By order dated May 17, 2001, the trial judge, Thomas King Kistler, directed respondent to file a statement of matters complained of on appeal pursuant to the Pennsylvania Rules of Appellate Procedure.

(7) By order filed June 5, 2001, Judge Kistler noted respondent's failure to file this statement.

(8) Respondent failed to complete the Superior Court docketing statement form provided all appellants by the Superior Court prothonotary's office.

(9) Respondent failed to file appellant's brief.

(10) By order dated December 28, 2001, this appeal was dismissed due to respondent's failure to file a brief. This order also directed respondent to file with the Superior Court, within 10 days, a "certification that the client has been notified of this dismissal."

(11) Respondent failed to file such a certification.

(12) On January 24, 2002, new counsel entered his appearance on behalf of Mr. Walker and respondent's representation ceased.

*McIntyre Matter*

(13) Ezzie Charles McIntyre was sentenced in Centre County on April 14, 1999, in connection with certain criminal charges. Mr. McIntyre filed a petition for relief under the Post Conviction Relief Act (PCRA).

(14) By order filed March 30, 2000, respondent was appointed to represent Mr. McIntyre with his PCRA, and was granted 30 days to file an amended PCRA petition on her client's behalf.

(15) Respondent never filed an amended petition, nor did she take any other action through April 2001.

(16) By letter dated April 26, 2001, respondent wrote to Mr. McIntyre and requested his input as to why he believed he was entitled to relief. Mr. McIntyre promptly answered respondent's inquiry.

(17) There was no further communication between respondent and her client, despite several attempts on Mr. McIntyre's part to communicate with respondent by telephone and/or letter during the period April 2001 through February 2002.

(18) In February 2002, Mr. McIntyre wrote to the Centre County Court Administrator's office complaining about respondent's lack of communication and activity, which letter was forwarded to the presiding judge.

(19) In February, March and May 2002, Mr. McIntyre wrote to respondent inquiring about the status of his case. He received no response from respondent.

(20) In June 2002, Mr. McIntyre received a letter indicating that respondent would be filing a brief in his case by June 17, 2002.

(21) Respondent never filed a brief or undertook any other action on behalf of her client.

*Judge Saxton Matter*

(22) By order of the Supreme Court of Pennsylvania dated November 1, 2002, effective December 1, 2002, respondent was transferred to inactive status for failure to pay her annual assessment.

(23) Despite her inactive status, which prohibited her from practicing law, on December 2, 2002, respondent represented the Commonwealth as an assistant district attorney in a jury trial before the Clinton County Court of Common Pleas in the criminal case of *Commonwealth v. Gerald Francis Smith.*

(24) Respondent failed to disclose her inactive status to the court or the district attorney.

(25) Several days after the trial, respondent was confronted with the fact of her inactive status by President Judge Saxton of the Clinton County Court of Common Pleas.

(26) Respondent was subsequently asked to resign her position with the district attorney's office in Clinton County.

(27) Respondent explained she misunderstood the notice that transferred her to inactive status and believed she had 30 days to make her payment.

(28) After her conversation with Judge Saxton, respondent sent in her assessment fee that same day.

(29) By application for resumption of active status for fiscal year 2002-2003, dated December 6, 2002, respondent applied for and was granted a return to active status, effective December 9, 2002.

(30) Respondent is presently employed by a State College settlement agency, Fidelity Closing Services. She conducts settlements and reviews documents prepared in connection with settlements other company representatives handle.

## III. CONCLUSIONS OF LAW

By her conduct as set forth above, respondent violated the following Rules of Professional Conduct and Rules of Disciplinary Enforcement:

(1) R.P.C. 1.1—A lawyer shall provide competent representation to a client.

(2) R.P.C. 1.3—A lawyer shall act with reasonable diligence and promptness in representing a client.

(3) R.P.C. 1.4(a)—A lawyer shall keep a client informed about the status of a matter and promptly comply with reasonable requests for information.

(4) R.P.C. 1.4(b)—A lawyer shall explain a matter to the extent necessary to permit the client to make informed decisions regarding the representation.

(5) R.P.C. 5.5(b)—A lawyer shall not practice law in a jurisdiction where to do so would be in violation of regulations of the profession in that jurisdiction.

(6) R.P.C. 8.4(b)—It is professional misconduct for a lawyer to commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects.

(7) R.P.C. 8.4(c)—It is professional misconduct for a lawyer to engage in conduct involving dishonesty, fraud, deceit or misrepresentation.

(8) R.P.C. 8.4(d)—It is professional misconduct for a lawyer to engage in conduct that is prejudicial to the administration of justice.

(9) Pa.R.D.E. 217(b)(c)(d)

(b)—A formerly admitted attorney shall promptly notify, or cause to be notified, by registered or certified mail, all clients who are involved in pending litigation or administrative proceedings, and the attorney or attorneys for each adverse party, of the transfer to inactive status and consequent inability of the formerly admitted attorney to act as an attorney after the effective date of the transfer to inactive status.

(c)—A formerly admitted attorney shall promptly notify, or cause to be notified, of the transfer to inactive status, all persons with whom the formerly admitted attorney may at any time expect to have professional contacts under circumstances where there is a reasonable probability that they may infer that he or she continues as an attorney in good standing.

(d)—Orders imposing transfer to inactive status shall be effective 30 days after entry. The formerly admitted

attorney shall not accept any new retainer or engage as attorney for another in any new case. However, during the period prior to the effective date, the attorney may wind up and complete all matters which were pending on the entry date.

## IV. DISCUSSION

This matter is before the board on a petition for discipline charging respondent with violation of the professional rules arising from her neglect of an appellate matter and a PCRA petition, and her practice of law while on inactive status. Respondent filed an answer admitting all of the facts and conclusions of law as set forth in the petition for discipline. The sole issue left for the board to consider is the degree of discipline warranted by respondent's misconduct.

The appropriateness of a disciplinary sanction is based on the nature and gravity of the misconduct and the aggravating and mitigating factors present. *In re Anonymous no. 85 D.B. 97,* 44 D.&C.4th 299 (1999). The two neglect matters of Kistler and McIntyre are similar in nature. They involve respondent's failure to file briefs, failure to communicate and failure to essentially take any action on the matter at hand. This misconduct mirrors respondent's prior misconduct that resulted in the imposition of an informal admonition. In that matter, which occurred in 2001, respondent was court-appointed to assist her client to pursue a PCRA petition. From the time of her court appointment in 1999 until May 2001, respondent failed to take virtually any action on the matter.

In the Saxton matter, respondent committed a short-lived act of the unauthorized practice of law by representing the Commonwealth in a criminal trial while she was on inactive status. The trial took place one day after her effective transfer to inactive status. Shortly after she was confronted by the president judge, she took appropriate steps to transfer back to active status. Respondent explained that she did not realize she was on inactive status while she represented the Commonwealth at trial. She misunderstood the notice of her transfer to inactive status, believing instead that she had 30 days to pay her fee. Regardless of respondent's explanation, it was her affirmative obligation to maintain an active attorney license if she intended to practice law. Her inattention to the details of official documents is inexcusable.

Given the two instances of client neglect, the history of discipline, and respondent's brief incident of unauthorized practice of law, the board is persuaded that the interests of the public can best be served by a suspension of one year and one day. See *In re Anonymous No. 131 D.B. 1999,* no. 660 disciplinary docket no. 3 (Pa. March 23, 2001) and *In re Anonymous 118 D.B. 2000,* no. 743 disciplinary docket no. 3 (Pa. June 13, 2002). By requiring that respondent submit herself to a reinstatement proceeding, the public can best be assured that respondent has addressed whatever professional and organizational difficulties may underlie this misconduct.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania unanimously recommends that the respondent,

Amy B. Burd, be suspended from the practice of law for a period of one year and one day.

It is further recommended that the expenses incurred in the investigation and prosecution of this matter are to be paid by the respondent.

Board Member Nordenberg did not participate in the September 27, 2004 adjudication.

### ORDER

And now, January 21, 2005, upon consideration of the report and recommendations of the Disciplinary Board dated November 2, 2004, it is hereby ordered that Amy S. Burd be and she is suspended from the bar of this Commonwealth for a period of one year and one day, and she shall comply with all the provisions of Rule 217 Pa.R.D.E.

It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.